**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)

**Joseph M. Rasa, Esq. (JR8345)**
**THE LAW OFFICES OF**
**JOSEPH M. RASA, L.L.C.**
565 Newark Pompton Turnpike
Pompton Plains, New Jersey 07444
(973) 831-8800

Attorneys for Debtor,
Victor Mondelli

**In Re:**

**VICTOR MONDELLI,**

       **Debtor.**

**Chapter:  13**

**Case No.:  12-16514-DHS**

**Judge:    HON. DONALD H. STECKROTH,**
          **U.S.B.J.**

**Hearing Date:  March 19, 2012**

---

**DEBTOR'S OPPOSITION TO SECURED CREDITOR'S MOTION TO DISMISS DEBTOR'S
BANKRUPTCY CASE AND DEBTOR'S CROSS-MOTION FOR ORDER AUTHORIZING SALE OF
REAL ESTATE, DETERMINING THAT THE DEBTOR IS WITHIN THE CHAPTER 13
JURISDICTIONAL CLAIMS LIMITATIONS SET FORTH AT 11 U.S.C. § 109(e) OR IN THE
ALTERNATIVE, CONVERTING DEBTOR'S CASE TO A CHAPTER 11 CASE**

Debtor, Victor Mondelli, by and through his attorneys, The Law Offices of Joseph M. Rasa, respectfully

submits this Opposition to Secured Creditor's Motion to Dismiss Debtor's Bankruptcy Case and Cross-Motion

for an Order Authorizing the Sale of his Real Property located at 260-264 Springfield Avenue, Berkeley

Heights, NJ 07922, free and clear of all liens, and for an Order Determining that the Debtor is Within the

Chapter 13 Jurisdictional Claims Limitations set forth at 11 U.S.C. § 109(e) or in the alternative, Converting

Debtor's Case to a Chapter 11 Case, and in support thereof states:

**JURISDICTION**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b).

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 2 of 15*

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On March 14, 2012 (the "Petition Date"), the Debtor filed an emergent voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") in the District of New Jersey ("Bankruptcy Court").

4.      This Opposition and Cross-Motion is submitted in opposition to the Motion to Dismiss the Debtor's bankruptcy case filed by the creditor holding the mortgage on Debtor's property, Jack Silverman Realty & Mortgage Co., LLC ("Mortgagee"), and in support of the Debtor's Motion for an Order Authorizing the Sale of his Real Property, free and clear of all liens, and for an Order Determining that the Debtor is Within the Chapter 13 Jurisdictional Claims Limitations set forth at 11 U.S.C. § 109(e) or in the alternative, Converting Debtor's Case to a Chapter 11 Case.

5.      The Debtor has not yet filed additional schedules.  The Debtor has received a Notice to Debtor and Debtor's Attorney to Commence Making Payments Pursuant to 11 U.S.C. § 1326.  The Debtor has received a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines and Marie-Ann Greenberg has been appointed as Chapter 13 Standing Trustee.

### Precipitating Event

6.      The filing was emergent due to a pending sheriff sale on two (2) parcels of property that the Debtor owns located at 240 Springfield Avenue (Block 801, Lot 23), Berkeley Heights, New Jersey 07922 ("Vacant Land") and 260-264 Springfield Avenue (Block 801, Lot 24), Berkeley Heights, New Jersey 07922 ("Commercial Property") (hereinafter reference to both properties shall be designated as "Properties").  The parcel of Vacant Land is jointly owned with the Debtor's mother and the Commercial Property is owned by the Debtor individually.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 3 of 15*

7.      The Debtor recently entered into a contract of sale of sell the Commercial Property for a amount significantly in excess of the amount that is allegedly owed to the Mortgagee, thus necessitating the bankruptcy filing to stay the pending sheriff sale.

## Procedural History of Prior Bankruptcy Case

8.      On February 18, 2004, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code.

9.      That case was converted to a case under Chapter 7 on October 21, 2004, reconverted to Chapter 13 case on February 5, 2005 and reconverted again to a Chapter 7 case on February 21, 2007.

10.      The Debtor received a discharge under Chapter 7 of the Bankruptcy Code on October 24, 2007.

11.      The Chapter 7 Trustee filed a final account on March 15, 2010 and the case was closed on that date.  The case was administratively reopened on July 1, 2010 and was reclosed on April 11, 2011.

12.      The cause of the Debtor's financial issues necessitating the prior bankruptcy filing related to the Debtor's receipt of the Properties from his father who had passed away.

13.      The Debtor is not equipped with the skills necessary to manage the Properties which has ultimately resulted in him needing to seek bankruptcy protection to prevent losing the same to creditors.

## Relationship Between Debtor and Mortgagee

14.      During the prior bankruptcy case, Debtor, Mortgagee and a related entity, Berkeley Realty Partners 244, LLC ("Berkeley") (jointly referred to as "Silverman Group") were introduced by a broker.  The Silverman Group was to provide financing to satisfy Debtor's obligations owed on the Properties (and perhaps, otherwise).

15.      As set forth in its moving papers, the Silverman Group loaned Debtor $650,000.00 in May 2007 authorized by an Order of this Court.  The terms of the loan provided that interest at 13% would accrue on the Note that was payable with principal within eighteen (18) months of the date it was executed.  The default rate is 17%, with a 1% "past due" charge if any payment is made more than forty-five (45) days late.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 4 of 15*

16.     The Note was secured by a 99 year ground lease ("Ground Lease") covering the Properties in the name of Berkeley (attached to Mortgagee's attorney's certification as Exhibit E).  In addition to the commercial mortgage, the Silverman Group also took back an Assignment of Rents and Leases.

17.     The Silverman Group has executed on the Assignment of Rents and Leases and is now collecting all of the rents for the Properties.

18.     At the same time, it is not paying the Debtor anything under the Ground Lease.  The sections of the Ground Lease relevant at this time are as follows:

19.     Paragraph 2.1 which provides that the rent due to the Debtor is $120,000.00 annually based upon a site plan of 30,000 square feet approved by the municipality of Berkeley Heights;

20.     Paragraph 2.1 further states that payments were to commence 180 day after all final un-appealable approvals and permits were received by the Lessee.

21.     Paragraph 2.2 provides mortgage payments shall be deducted from the rent payments prior to payment to the Debtor.

22.     It is believed that final un-appealable approvals and permits to construct an 18,000 square foot structure were received by the Silverman Group during the summer of 2010 so Silverman Group's payment obligation became effective in January 2011.

**Additional Procedural History**

23.     In addition to his own prior bankruptcy case, the Debtor has been involved in appeals of orders entered in that case.  One appeal at the federal level is continuing.

24.     Additionally, recently the Debtor's mother filed a bankruptcy proceeding in an effort to stay the foreclosure sale pending against the Vacant Land in which she holds a 50% interest.

25.     Finally, the Debtor and the Silverman Group have been involved in significant litigation in the New Jersey Superior Court, Chancery Division and Appellate Division.  It is unclear whether any issues are presently pending before the Appellate Division, however, a trial is scheduled before the Chancery Division.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 5 of 15*

## RELIEF REQUESTED AND BASIS THEREFORE

26.     Shortly after the Debtor filed the within bankruptcy petition, the Mortgagee filed a motion to dismiss.  The motion was filed on substantially the same grounds as a motion filed against the Debtor's mother in her bankruptcy case filed several weeks ago.

27.     The Mortgagee requests this Court enter an Order dismissing the Debtor's case, barring the re-filing of a bankruptcy case for ninety (90) days, granting sanctions from the Debtor, Debtor's bankruptcy attorney and Debtor's state court attorney, Kenneth Rosellini, Esq., or in the alternative, vacate the stay as to the Properties in order that the sheriff sale may proceed and the claims existing between the parties be tried in the Superior Court of New Jersey based upon the following grounds:

      a.     the Debtor's secured claims exceed the statutory limitation set for in 11 U.S.C. § 109(e); and

      b.     that the Debtor's petition lacks good faith because it was meant solely for delaying the Mortgagee's sheriff's sale and not for any legitimate reorganization purpose;

      c.     and that the Debtor's prior case is open because it is on appeal.

28.     Without raising any new issues, the Chapter 13 Trustee has submitted support for the Mortgagee's position asserting that the Debtor's secured claims exceed the section 109(e) limitation and that his petition was not filed in good faith.

29.     The Debtor opposes the Mortgagee's motion that his petition was not filed in good faith and cross-moves for an order authorizing the sale of the Commercial Property, as well as a determination that the amount of his secured claim is below the section 109(e) limitation, and that in the alternative, he be permitted to covert his case to a case pending under Chapter 11 of the Bankruptcy Code.

30.     The Debtor's requested relief is based upon the following:

a. The Debtor's bankruptcy petition was not filed in bad faith because he entered into a bonafide contract of sale based upon a fair market value appraisal, which said selling price is far in excess of the amount allegedly owed to the Silverman Group;

b. and the Debtor can propose, confirm and successfully complete a Chapter 13 Plan that provides 100% payment to his creditors;

c. The amount of the Debtor's secured claims are less than the limitation set forth in 11 U.S.C. § 109(e) because as of the date of filing the claim of the Silverman Group is disputed and contingent upon credits that are due and owing to the Debtor under the Ground Lease that must be offset against the amounts allegedly owed by the Debtor under the ground lease and is therefore, unliquidated;

d. The prior bankruptcy case is closed and any pending appeal does not affect the Debtor's ability to file the within case; and

e. The Debtor was and is competent when he made his decision to sign and file the petition, understood why he was filing the petition and did so willingly and voluntarily.

31.     For the reasons set forth herein, it is respectfully requested that this Court deny the relief requested by the Mortgagee and Trustee; and enter an Order authorizing the Debtor to sell the Commercial Property; determining that the Debtor is eligible to file a petition under Chapter 13 of the Bankruptcy Code, or in the alternative, permitting the Debtor to convert this case to a case under Chapter 11 of the Bankruptcy Code.

## OPPOSITION TO MORTGAGEE'S MOTION

### Debtor's Motion is Not a Bad Faith Filing

32.     Debtor agrees with the Mortgagee's assertion that the filing of a bankruptcy petition simply to delay a sheriff's sale is a bad faith filing and that the Court has the inherent power to dismiss a petition that is filed in bad faith.

33.     However, in this case the Debtor's petition was not filed in bad faith.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 7 of 15*

34.     Indeed, the Debtor has a means to extricate himself from bankruptcy, a requirement of the undersigned prior to filing the case.

35.     In this matter, the Debtor has a entered into a contract of sale.  The selling price is based upon a recent appraisal and is reasonable.  The terms of the transaction are fair.

36.     While it should be noted that the buyer is the Debtor's cousin, as the selling price is based upon a recent appraisal conducted by an appraiser, it is argued that the terms of the transaction are therefore "arms length."

37.     Moreover, the factors set forth in In re Goddard, 212 B.R. 233, 237 (D.N.J. 1997) (citing In re Lilley, 91 F.3d 491, 496 (C.A.3 1996), do not support the Mortgagee's position, notwithstanding its assertions to the contrary.

38.     The nature of the debt and how the debt arose do not seem to apply.  The instant debt is a mortgage.  The Mortgagee would agree that it is not debt incurred by the Debtor right before filing a petition for the sole purpose of avoiding repayment of same.

39.     The timing of the petition does not support the Mortgagee's position either.  The Debtor tried everything possible to resolve this matter and only came to this Court when he was out of options.

40.     The Debtor's motive in filing the petition is clear.  He seeks to sell the Commercial Property for a reasonable price, not allow it to be lost at a sheriff sale.

41.     The Debtor's treatment of creditors before and after the petition supports the Debtor, not the Mortgagee.  The Debtor shall propose a 100% dividend to his unsecured creditors to whom he estimates he owes approximately $45,000.00, as well as full payment of the Mortgagee's actual claim.  If the Commercial Property is lost a sheriff sale it is clear that the unsecured fare much worse than the alternative.

42.     Finally, the Debtor has hid nothing in this action from the Court or his creditors.  While there is a long and sordid past relationship between the Silverman Group and the Debtor, that past, whatever it is, should not be considered by this Court at this time.  The issue in this case is whether the Debtor can propose and

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 8 of 15*

confirm a plan to satisfy his creditors.  Inasmuch as it is clear that he can propose and confirm such a plan, his

case should not be dismissed on the grounds that it is a bad faith filing.

43.     It should be further noted that the Mortgagee's position regarding a momentary delay is illogical.

What benefit would be Debtor derive by filing a petition without a means of satisfying a plan?  Surely a delay

would not be very long without a means to an end and the Debtor would gain nothing from that.

44.      As stated, the Mortgagee goes far afield in attempting to make out his case that this is a bad

faith filing but again, the touchstone should not be what happened between these parties during the past several

years, it should be whether the Debtor can propose and confirm a plan that satisfies his creditors and the

mandates of the Bankruptcy Code.

45.     For sure, the Debtor could likely write a book on the wrongs perpetrated by the Silverman

Group.  Indeed, he and his mother derived $650,000 from Properties that are arguably worth nearly three (3)

times that amount, and are now facing a sheriff sale which if it is permitted to proceed, will thwart any effort

that the Debtor may have to recover anywhere near the Properties' actual worth.

46.     However, what occurred in the past several years does not necessarily have a bearing on whether

the Debtor can propose a plan at this time.  Since he has a bonafide buyer pursuant to a reasonable contract, it is

asserted that he can absolutely propose, confirm and complete a Chapter 13 Plan that satisfies the Mortgagee, as

well as the Debtor's other creditors.  As such, his petition is not a bad faith filing and should not be dismissed.

**Relief from the Automatic Stay to permit the Sheriff's Sale to be Conducted Should Not be Granted**

47.     The Mortgagee's position is that this Court vacate the stay set forth at 11 U.S.C. § 362(a) based

upon 11 U.S.C. § 362(d) because (1) the petition was filed in bad faith and (2) the Debtor has no equity in the

Commercial Property.

48.     The issue pertaining bad faith was addressed *supra* and Debtor has nothing further to add to this

issue.

49.     The issue pertaining to equity in the Commercial Property is based upon a faulty assumption.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 9 of 15*

50.     It is unclear why the first page of the petition lists the Debtor's assets as being between $1 and $50,000 because that is inaccurate and the first page of the petition will be amended upon the filing of this application.

51.     However, Mortgagee's reliance upon the first page of the petition is a demonstration of its willingness to manipulate the facts when it suits itself.

52.     The Mortgagee knows far better than the Debtor the worth of the Commercial Property.  To argue that 11 U.S.C. § 362(d) applies because the Debtor has no equity in the Commercial Property due to a clearly erroneous item on the cover page of an emergent petition underscores the depth of the Mortgagee's disdain towards the Debtor, and its willingness to capitalize on the superior position that it has asserted throughout the Silverman Group's involvement with the Debtor.

53.     Moreover, its argument that the stay should be vacated because the Debtor would have an easier means of proposing a plan of reorganization is likewise, a disingenuous argument.

54.     Without the equity in the Commercial Property that the Debtor will realize upon the market sale of same, the Debtor cannot satisfy the plan that he will propose.

55.     Inasmuch as the Mortgagee's argument is insincere, it should be disregarded by this Court.

56.     Moreover, it should be noted that the undersigned did not know Debtor prior to last Tuesday and met with the Debtor for the first time on Wednesday, the day that the petition was filed.  Therefore, the Mortgagee's assertion that the Debtor has had the petition ready for weeks is simply wrong as this did not occur.

57.     In any event, 11 U.S.C. § 362(d) does not apply because the Debtor obviously has equity in the Commercial Property, and the Mortgagee's request that the stay be vacated should not be granted.

58.     As stated *supra*, if the stay were vacated and the property lost at sheriff sale, the Debtor would be in a far worse position from which it is doubtful he would recover.

### Debtor's Secured Debt does not Exceed the Monetary Limit set forth in 11 U.S.C. § 109(e)

59.     Both the Silverman Group and the Chapter 13 Standing Trustee, Ms. Greenberg, have argued that the Debtor's secured debt exceeds the monetary limitations set forth at 11 U.S.C. § 109(e), and that therefore, this Court does not have jurisdiction to hear the Debtor's case and same should be dismissed.

60.     Section 109(e) of the Bankruptcy Code provides that a person may not be a debtor under chapter 13 if his secured non-contingent liquidated claims exceed $1,081,400.00.

61.     In this case, the Debtor asserts that the only secured claim that he has is the mortgage owed to the Silverman Group but that this claim is contingent upon credits being applied to the debt which will reduce it to below the monetary limitation, which therefore renders the debt unliquidated.  See In re Lambert, 43 B.R. 913 (Bankr. D. Utah 1984) (finding that when disputed debt is contingent at time of filing, it may not be counted for eligibility purposes and only those disputed debts that are noncontingent at time of filing are to be counted in eligibility tally unless existing dispute is over liability underlying debt or amount of debt, either of which disputes would render otherwise noncontingent debt unliquidated within meaning of section 109).

62.     In this case, the Debtor argues that the Silverman Group has collected all of the rents attributed to the Ground Lease under the assignment of rents and leases.  Its payment obligation under the Ground Lease became effective nearly fifteen (15) months ago yet it has not applied those rents it owes to the outstanding mortgage balance owed.

63.     Moreover, it has leased a portion of the Commercial Property to itself yet it has failed to collect rent from itself, as required under the Ground Lease, or credit said rent to the amount of its alleged claim.

64.     As there is a dispute as to the amount of the debt, and the actual amount of the debt is contingent upon the application of the payments which the Silverman Group has not done, the debt is unliquidated and the Debtor is therefore, not ineligible to be a Chapter 13 Debtor.

65.    It should be noted that this issue is being litigated in the Superior Court and the amount of the debt has not been resolved.  However, the amount of a debt for both debtor eligibility and ultimate payment is an issue to be addressed by this Court.

66.    Accordingly, inasmuch as the Mortgagee argues that the same should be determined by the Superior Court, the Debtor argues that it is a core proceeding to be determined by this Court pursuant to 28 U.S.C. § 157(b)(2)(C).

67.    Moreover, a resolution of this issue cannot be done by the undersigned without discovery and a plenary hearing.

68.    Accordingly, the Mortgagee's and Trustee's requested relief should be denied.

69.    Moreover, the Debtor asserts that in the event it is determined that the secured debt exceeds the monetary limitations set forth at 11 U.S.C. § 109(e), that the case should be converted to a Chapter 11 case, not dismissed.

70.    As stated, the Debtor filed this case in good faith.  Absent a bad faith filing, the Debtor should be allowed to proceed in bankruptcy to the end that he can have the sale of his property approved, pay off his creditors and move on with his life.

**Debtor's Prior Bankruptcy Case is Closed and the Pending Appeal before The Third Circuit Court of Appeals is Not an Impediment to the Prosecution of the Current Bankruptcy Case**

71.    The Mortgagee has asserted that since the Debtor's prior case is pending on appeal, the instant case must be dismissed.

72.    The Mortgagee correctly notes, however, that the prior bankruptcy case was closed.

73.    Since the prior case is closed, and there is no other impediment to the Debtor's filing of the bankruptcy case except the issues addressed herein, it is asserted that the Debtor properly filed the within case.

74.    Thus, the Debtor's case should not be dismissed on account of the pending appeal.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 12 of 15*

### Sanctions are not warranted

75.     Sanctions against the Debtor, his attorney or his State Court attorney are unwarranted in this case.

76.     As stated, the Debtor filed this case in good faith.

77.     The Debtor entered into a contract to sell the Commercial Property only after he exhausted every other avenue available to him.

78.     The buyer of the property is the Debtor's cousin.  The buyer and her husband apparently only became aware of the Debtor's legal issues several months ago.

79.     Although they are people of means, the buyer and her husband were reluctant to make an offer to purchase property before they obtained an appraisal on same.

80.     Moreover, they were concerned about value of the lien encumbering the Properties and believed that the value thereof would be determined by the Superior Court well prior to the date of the sheriff sale.

81.     When that did not happen, the obtained an appraisal and entered in a contract with the Debtor to purchase the Commercial Property.

82.     Although the Silverman Group tries to characterize the entire filing as a sham with no purpose, as stated herein, the Debtor simply wants to sell the Commercial Property for fair value in order that he does not have to live like a pauper for the rest of his life.

83.     Since there was no mal-purpose or improper motive for the Debtor's bankruptcy filing, sanctions are simply unwarranted.  Had the Debtor falsified records or taken other vexatious, wanton, or for oppressive actions against the interests of the Mortgagee (or any other creditor for that matter), sanctions may be appropriate.  See In re Gioioso,  979 F.2d 956, 964 (3rd Circ. 1992).

84.     However, in this case, that did not occur.  There was no fraud, false swearing or vexatious, wanton, or oppressive conduct.  There is simply a Debtor trying to save the only asset that he has, or likely will have, for the rest of his life, by exercising his right to submit to the power of the bankruptcy court.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 13 of 15*

85.     While the Mortgagee may not like that the Debtor is attempting to sell the Commercial Property,

it is not wrongful that he tries to do so and seeks the protection of the Bankruptcy Court to do so.

86.     Accordingly, the Mortgagee's and Trustee's request for sanctions should be denied.

## DEBTOR'S CROSS-MOTION

### Order Authorizing Sale of Property

87.     The Debtor hereby requests that this Court authorize the Debtor to sell the Commercial Property

to Heidi Santore ("Buyer") for a purchase price of $1,454,000.00 pursuant to the parties' contract of sale

("Contract").

88.     The Debtor and Buyer are cousins.  However, the offer to purchase is based upon a recently

prepared appraisal ("Appraisal").

89.     Accordingly, the transaction is an "arms length agreement."  Copies of the Contract and the

Appraisal are attached to the Certification of Debtor's attorney.

90.     The Buyer proposes to purchase the Commercial Property by tendering an initial deposit of

$10,000.00, obtaining a mortgage of $1,163,200.00 and paying the $280,800.00 balance in cash at closing.

91.     The Buyer proposes to close on the Commercial Property on June 15, 2012.

92.     The Debtor has only one secured creditor, as well as two unsecured creditors.  The Debtor

requests that the Commercial Property be sold free and clear of all liens, and that at the time of closing, the

lien(s) attach to the closing proceeds until same is satisfied.

93.     The terms of the proposed Contract are fair and reasonable to the Debtor.

94.     The sale price is based off of an Appraisal, and the Debtor believes that it accurately reflects the

true fair market value of the property.

95.     Upon the sale and payment of the proceeds to the Mortgagee, the Debtor has a reasonable

expectation of being able to pay the unsecured creditors in full through the Chapter 13 Plan.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 14 of 15*

96.     Accordingly, it is respectfully requested that the Court grant Debtor's Cross-Motion for Order Authorizing the Sale of his property upon the terms as set forth in the Contract of Sale attached hereto.

## Determination that the Debtor's Secured Noncontingent Liquidated Debts are Within the Chapter 13 Limitations set forth at 11 U.S.C. § 109(e)

97.     As stated *supra*, the Debtor also seeks a determination that his secured noncontingent liquidated debts are within the Chapter 13 limitations set forth at 11 U.S.C. § 109(e), for the reasons more fully articulated herein.

## WAIVER OF BRIEF, NOTICE AND PRIOR APPLICATION

98.     The Debtor submits that this Opposition and Cross-motion does not present novel issues of law requiring the citation to any authority other than the authority cited herein, and, accordingly, respectfully requests that the Court waive the requirement contained in the District of New Jersey Local Bankruptcy Rules, D.N.J. LBR 9013-2 that a separate memorandum of law be submitted.

99.     Notice of this Motion has being given to the parties set forth on the Certificate of Service attached to the Debtor's Notice of Cross-motion.

100.    No prior request for the relief sought in this Cross-motion has been made to this or any other court.

*DEBTOR'S OPPOSITION AND CROSS-MOTION*
*Page 15 of 15*

**WHEREFORE**, Debtor, Victor Mondelli, respectfully requests that this Court deny the relief sought by the Mortgagee, Jack Silverman Realty & Mortgage Co., LLC and Marie-Ann Greenberg, Chapter 13 Standing Trustee, and enter an Order (1) authorizing him to sell his real property located 260 Springfield Avenue, Berkeley Heights, NJ 07922, upon the terms set forth in the Contract of Sale attached hereto, free of all liens and encumbrances, and (2) determining that he is eligible to be a debtor under Chapter 13 of Title 11, or in the alternative, enter an Order converting his case to a case under Chapter 11 of Title 11.

Respectfully submitted,

**THE LAW OFFICES OF
JOSEPH M. RASA, L.L.C.**
Attorneys for Debtor,
Victor Mondelli

Dated:  March 19, 2012            By:   /s/ JOSEPH M. RASA
**JOSEPH M. RASA (JR8345)**