UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

```
x- - - - - - - - - - - - - - - x
IN THE MATTER OF:            . Case No. 12-16514(DHS)
                            . Newark, New Jersey
VICTOR MONDELLI,            .
                            . March 19, 2012
        Debtor,            .
- - - - - - - - - - - - - - - -.
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:            JOSEPH M. RASA, ESQ.
                           565 Newark Pompton Turnpike
                           Pompton Plains, NJ  07444


For the Movant:            FISCHER PORTER THOMAS & REINFELD, P.C.
                           BY:  ARTHUR PORTER, Jr., ESQ.
                                AARON ALBERT, ESQ.
                           180 Sylvan Avenue
                           2nd Floor
                           Englewood Cliffs, NJ  07632

Chapter 13 Trustee:        MARIE-ANN GREENBERG, ESQ.
                           30 Two Bridges Road
                           Suite 330
                           Fairfield, NJ  07004




Electronic Court Reporter:                 Edith Valentin

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

---

**TERRY GRIBBEN'S TRANSCRIPTION SERVICE**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ  07750**
**800 603-6212**
**(732) 263-0044    Fax No. 732-263-0075**
www.tgribbentranscription.com

1                             **I N D E X**

2

3    ORAL ARGUMENT                              PAGE

4          BY MR. PORTER                        5/24

5          BY MR. RASA                          9/24

6          BY MS. GREENBERG                      22

7

8    DECISION                                    27

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                        3

1           THE COURT:  Be seated, please.  This is the hearing

2    on an order shortening time in the Mondelli, Victor Mondelli

3    matter.  Can we have appearances, please.

4           MR. PORTER:  Good afternoon, Your Honor, Arthur Scott

5    Porter, Jr., with Aaron Albert, with the firm Fischer Porter

6    Thomas and Reinfeld, on behalf of the movant.

7           MR. RASA:  Good afternoon, Your Honor, Joseph Rasa,

8    counsel for the debtor, Victor Mondelli.

9           MS. GREENBERG:  Good afternoon, Marie-Ann Greenberg,

10   Chapter 13 standing Trustee.

11          THE COURT:  All right, great, thank you.  Be seated.

12   This is, as I indicated, a hearing on short notice in which the

13   secured party has moved to dismiss the debtor's Chapter 13

14   petition of last week, or in the alternative for relief from

15   the automatic stay, with prospective relief.  I entered an

16   order to shortening time for a hearing today.

17          I have reviewed the application.  I want the record

18   to reflect I reviewed the application, the affidavits that have

19   been filed in support of it, the Chapter 13 Trustee's letter of

20   March 16th, and the debtor's opposition to the motion. And the

21   debtor has also requested by a cross motion that the approval

22   of a sale of the subject property.

23          Mr. Porter, I'll hear you.

24          MR. PORTER:  Thank you, Your Honor.  Your Honor,

25   we've just seen you a short time ago and I will try to control

                              Porter/Argument                        4

1   my rage in respect to the application that was made last

2   Wednesday to stay the Sheriff's sale.  As it turns out --

3            THE COURT:  Was it last Wednesday that the Sheriff's

4   sale was scheduled?

5            MR. PORTER:  Correct, Your Honor.

6            THE COURT:  Okay.

7            MR. PORTER:  Scheduled at two o'clock, and it was

8   that day, there was a little confusion in terms of when in fact

9   my office was notified of it.  But effectively my associate was

10  down at the Sheriff's Office as we were notified, Judge.

11           As Your Honor well knows, we were here just two weeks

12  ago with regard to Anna Mondelli's application for our

13  application to dismiss her bankruptcy proceeding.  And it turns

14  out, Judge, that at that time while we were here, Mr. Mondelli,

15  Mr. Rosellini, and I'm not sure when Mr. Rasa became involved,

16  but they were involved in another scheme to try to delay the

17  foreclosure sale of the property that my clients had started

18  foreclosure proceedings back in 2008.

19           And here we are again, Judge.  This is an outrage,

20  Judge.  This is a toying with the Court.  This is a scam.  This

21  is just not tolerable by you, by the District Court, by the

22  Court of Appeals, by anybody.

23           What's happened here is an outrage, Judge. Under the

24  law though, and let's stick to the law, because that's what we

25  need to do, there's no choice but for Your Honor to dismiss

Porter/Argument                                    5

1   this petition.

2            Under the _Lilley_ factors it's clear, absolutely clear

3   that this petition was brought for one reason, to stop a

4   foreclosure sale.  Mr. Mondelli, now claims he has a buyer.

5   Where has this buyer been for four years?  Where has he been?

6   In fact, Your Honor, this buyer contacted my office in October.

7   There is no prejudice whatsoever to this phantom buyer for this

8   Sheriff's sale to go forward.  Nor is there any prejudice to

9   Mr. Mondelli.  The Sheriff's sale is scheduled for now this --

10  is not scheduled right now, but we are told that if we obtain

11  relief from Your Honor, that it is very likely we can have a

12  sale scheduled for this Wednesday.  It is also important for

13  Your Honor to know is that we have the trial in this matter

14  scheduled for this Wednesday also.

15           So under the _Lilley_ factors it's clear, Judge, that

16  in fact this petition was filed for no other reason other than

17  to stop the foreclosure sale.  The facts are clear.  On

18  February 29th Mr. Mondelli himself is supposedly meeting with a

19  credit  counselor.  That's the day that we were supposed to

20  have the first sale, that Anna Mondelli caused to be delayed.

21           Mr. Mondelli then worked apparently with Mr.

22  Rosellini to file this petition.  And the petition Your Honor,

23  doesn't even match the threshold that's required under USC 109.

24  It's the same position we had two weeks ago, Judge, where Your

25  Honor correctly ruled that, one, the application, the petition

Porter/Argument                                          6

1   that was brought by Anna Mondelli exceeded the jurisdictional

2   threshold.  And two, that it was brought in bad faith.

3          And of course, Judge, under USC 362D(1) and (2),

4   there's good cause to dismiss this petition and it involves

5   property.  There's no equity in this property, Judge. And

6   there's good cause under the bag faith provisions that we've

7   provided to you.

8          An interesting side issue here, Judge, is whether or

9   not this bankruptcy case that Mr. Mondelli filed back in 2004

10  is in fact still pending.  It's on appeal to the Court of

11  Appeals now.  Maybe it's still pending.  So he would be

12  precluded under those circumstances also, Your Honor.

13         What we've been provided with, Judge, is a sham

14  contract.  A contract that on its face should be rejected by

15  Your Honor.  And I submit to Your Honor, you should look at it

16  carefully and see what I think are indicia of nothing other

17  than an attempt to forestall the inevitable here.

18         The contract itself is not for the two lots.  It's

19  for Lot 23 only not 23 and 24.  In addition, Judge, it says

20  that the sellers have until October 10th 2011 to obtain

21  financing.  In other words, Judge, that contract was created

22  months ago.

23         And then what they support it of course with is well,

24  we're going to have a mortgage. And of course we'll pay a

25  deposit.  That hasn't happened, Judge, there's no deposit.

Porter/Argument                                                        7

1    There's no certification from these alleged buyers.  These

2    alleged buyers are coming out of the woodwork either to take

3    the property from Mr. Mondelli, or to just help him as family

4    members, without respect to the situation or the circumstances

5    that my clients have been put through since 2007.

6           The supposed appraisal that's attached has a few

7    caveats, Judge.  A few caveats.  One we're not sure which

8    property it applies to.  But it says, oh, this is all subject

9    to an income appraisal.  Judge, there is no way that that

10   appraisal can be viewed by Your Honor of having any legitimacy.

11   There is no way that you can view this appraisal as meaning

12   anything other than as part of the plan hatched by Mr.

13   Rosellini, Mr. Mondelli, and now counsel.

14          And Judge, I submit to you, this is the case, this is

15   the time for Your Honor to impose sanctions against Mr.

16   Rosellini, against Mr. Mondelli, against his new counsel Mr.

17   Rasa.  What's clear, Judge, is that Mr. Rasa did not do his

18   homework, he didn't understand what was happening here.  He has

19   the temerity to submit a Chapter 13 petition where he says, my

20   client doesn't need counseling for his mental situation.  But

21   at the same time Mr. Rosellini is in Chancery Court before

22   Judge Malone saying, my client's incompetent.  He's a

23   schizophrenic.

24          This is what we've been having for five years, Judge.

25   And it's time for Your Honor to put an end to it so my clients

1   can recover their investment that they made.  Proceed to the

2   foreclosure action.  Obtain title to the property.  Proceed to

3   the trial so they can recover their damages.  And put an end to

4   this, Judge.

5            I would submit that Your Honor should dismiss the

6   petition as a bad faith filing.  It doesn't satisfy the

7   jurisdictional amounts.  And that you should impose a $10,000

8   sanction as against Mr. Rasa, as against Mr. Rosellini, as

9   against Mr. Mondelli, Judge.  And you should also stipulate

10   that they cannot file a bankruptcy petition for 120 days.  And

11   this should be with prejudice, Your Honor, these orders, such

12   that these parties if they want to do what they want to do it's

13   with prejudice, Judge.

14            So I would submit, Your Honor, the <u>Lilley</u> factors

15   have been established.  There's an excess of the threshold

16   under 363D(1) and (2), we've satisfied the requirements.  And

17   there's an issue as to whether the case is open.  And I would

18   submit as to the sanctions, Judge, that in fact Your Honor has

19   the inherent authority to issue sanctions under 11 USC 105,

20   where it's clear that the statute provides you with authority

21   to impose sanctions where there has been -- to prevent an abuse

22   of process.  And that's what this is, Judge.

23            Think about it, my clients now are losing $300 a day.

24   That's what the papers show.  That's what the calculations

25   show, $300 a day because of the games and the outrageous

Rasa/Argument                                                    9

1   conduct of Mr. Mondelli and his attorneys.  And now we have a

2   new player.  A new bankruptcy attorney who now claims, oh no I

3   can save the day here, Judge.  That boat passed years ago.

4   It's time, Your Honor, and I know this is difficult, it's time

5   Your Honor for sanctions to be issued.  For Mr. Mondelli to pay

6   the price for coming into this court wasting your time, my

7   client's time, my client's money, and this whole court, so we

8   can move forward, and wasting the Sheriff's time also, Judge.

9   Let's move on with this case, Judge.

10          I have a lot more to say but I think it would be

11  appropriate if I could reserve, Judge, to hear what counsel has

12  to say.

13          THE COURT:  Thank you very much.

14          MR. PORTER:  Thank you, Judge.

15          MR. RASA:  Good afternoon, Your Honor.

16          THE COURT:  Good afternoon.

17          MR. RASA:  Your Honor, I'm a bit outraged.  I have a

18  man, -- first of all, I'm being attacked personally.  I

19  practice before this Court regularly, Your Honor.  I never

20  filed a bad faith petition, I never claimed to file a bad faith

21  petition, this petition is not a bad faith petition.  I have a

22  gentleman walk in my office last week, there's something wrong

23  with this picture.  He walks in, on paper, despite what Mr.

24  Porter says, he has equity in that property.

25          THE COURT:  Did you do any investigation?

 1              MR. RASA:  I had a contract of sale, Your Honor.

 2              THE COURT:  Did you talk to his former lawyer, Mr.

 3    Rosellini?

 4              MR. RASA:  No, I did not, Your Honor.  And actually

 5    I'm pleased I'm didn't speak to him because with all the

 6    allegations regarding some conspiracy, I'm glad I didn't speak

 7    with him.

 8              THE COURT:  Did you know he had filed previous

 9    petitions?

10              MR. RASA:  Oh, absolutely, Your Honor.

11              THE COURT:  And in the District Court and Circuit

12    Court.

13              MR. RASA:  I read the docket.  I read the docket

14    fully.

15              THE COURT:  Okay.

16              MR. RASA:  And the docket was --

17              THE COURT:  Did you know he had just filed for his

18    mother a couple of days before that?

19              MR. RASA:  Your Honor, absolutely.  And --

20              THE COURT:  He told you that?

21              MR. RASA:  Yes, he did.

22              THE COURT:  And did you know --

23              MR. RASA:  He didn't file, his mother filed. And I'm

24    not sure --

25              THE COURT:  He filed his mother's petition under a

Rasa/Argument                              11

1    power of attorney.

2              MR. RASA:  Yes, that was done.

3              THE COURT:  So you knew about it.

4              MR. RASA:  I knew that, Your Honor.

5              THE COURT:  Did you see the order I entered a week

6    and a half ago on relatively the same petition?

7              MR. RASA:  Yes, Your Honor, I absolutely did.

8              THE COURT:  Okay.  All right.

9              MR. RASA:  Okay, knowing all of this, the man comes

10   in and I'm looking at his documentation here on paper, he's

11   worth several 100 thousand dollars.  I have a contract of sale.

12   I have an appraised value of property that's 1, -- or at least

13   for one parcel, it's not 23, it's 24, Your Honor, it's the

14   commercial property. And he's on food stamps and SSI.  That's

15   what he's receiving.  Something is wrong.

16             As I dig deeper, this is the crux of the argument.

17   Now I understand that he had a prior bankruptcy case and the

18   bankruptcy case is, the procedural history is at best twisted.

19   And I don't profess to know what happened in that case.  It's

20   too long.  It's too long, it would take me a week to read to

21   it, just the docket alone was 400 and something entries I

22   believe.

23             There's an order entered that Mr. Silverman lends

24   $650,000 to the debtor back in 2007.  And takes a mortgage.

25   And takes a ground lease in the related companies. Sets up a

Rasa/Argument                                        12

1   ground lease.  Well, they know full well at that point that if

2   the ground lease isn't paid, the mortgage can't be paid.  The

3   debtor's gotten no money out of the ground lease.  So how can

4   he pay the mortgage?  They control both ends of the spectrum.

5   Now I'm looking at this last week, and saying to myself, am I

6   missing something.  Am I missing something.  I'm cognizant that

7   we have a Sheriff's sale pending.  I'm asking why is this being

8   done now.  Why is this being done now.  Speak to the buyers.

9          Well, I do speak to the buyers.  I do my diligence.

10  The buyer says, because we're related, I didn't know what was

11  going on until October, November of 2011.  I said, well, --

12         THE COURT:  Well, that's six months ago.

13         MR. RASA:  Yeah.  I said, well, what were you waiting

14  for.  He said he were waiting frankly to see if this worked

15  itself out.  There's claims pending in the Superior Court.  We

16  don't know exactly what those claims are worth.  This may be a

17  short sale for all we know, we don't know. We're waiting for

18  that to get worked out.  When it appeared that it wasn't going

19  to work out, we got an appraisal.

20         Now I have with me today Mr. Santore, Jr., he is an

21  attorney.

22         MR. SANTORE:  Your Honor, for the record, August

23  Santore, Jr. Attorney at Law, State of New Jersey.

24         MR. RASA:  Mr. Santore is the son of the buyers.

25  Okay, and it's a husband and wife although the wife is the only

Rasa/Argument                                          13

1    one on the contract.  I brought Mr. Santore today, if there's

2    any questions regarding the efficacy of the buyer of the

3    contract, he can speak to that directly.

4           But I've spoken to the buyer, the buyer's husband, at

5    length.  This isn't a sham contract.  He has the means to buy,

6    and in fact I have a financial statement which I can give to

7    Mr. Porter now, but he's just going to rip it up and it's not

8    going to mean anything.  And then the motion gets filed.  It's

9    filed that same day.

10          I understand that his clients feel that --

11          THE COURT:  What would you expect them to do, when

12   they go to a Sheriff's sale for the X number of times, and they

13   find another, and I'll use that word another bankruptcy

14   petition had been filed to stay their sale.  What would you

15   expect him to do?

16          MR. RASA:  Your Honor, actually I was going to say,

17   I'm not entirely unsympathetic to Mr. Silverman and his

18   position.  Although I don't know all the intricacies of this

19   case, I'm not unsympathetic, I do represent creditors and it's

20   very frustrating when you have a debtor who has a twisted

21   procedural history in Bankruptcy Court and Superior Court, who

22   knows what's going on.  We have appeals going on in both places

23   I understand.

24          THE COURT:  And that --

25          MR. RASA:  And I don't profess to know everything.

Rasa/Argument                                    14

 1   On the other hand, Your Honor, I have to look at the client as

 2   the client comes in the door and say, what do we have here.  Is

 3   this a good faith -- is this a good faith petitioner or is not.

 4        THE COURT:  Does it factor into your judgment that

 5   when you look at the docket in the State Court or the

 6   Bankruptcy Court and it's voluminous and there's appeals going

 7   on.  And you look at the appeals and you see they're all from

 8   your potential new client, doesn't that trigger something?

 9        MR. RASA:  You know, it does, Your Honor, and I took

10   the, actually unusual step, I reached out to one of the

11   attorneys, which was involved in this case, Shoshana Schiff,

12   and I know Ms. Schiff from law school.  We go back many, many

13   years.  And I ran this by her and she said, stay away.  I said,

14   okay.  I said, I understand why.

15        But here's what I see.  I see an aggrieved debtor.  I

16   see apparently he gets $650,000 paid on his behalf and that's

17   it, out of a building that's worth three times that.  And the

18   person who paid him controls both ends of the spectrum.

19   Controls the income stream to him and also controls the expense

20   out of him.  And I, at that point, saying this doesn't seem

21   right, something is wrong.

22        And given the little time that I have, obviously, we

23   have a Sheriff's sale pending, I have to make a decision.  And

24   that's the decision I made.  I feel it was a reasonable

25   decision.

Rasa/Argument                                    15

1              THE COURT:  All right.

2              MR. RASA:  Now getting past that, I think that

3    addresses the sanction issues.  I can't speak to Mr. Rosellini,

4    other than I can tell this  Court that I've never spoken to the

5    man.  We went to law school together, I may have spoken to him

6    back in law school.  But we have not spoken.  There's no

7    conspiracy.  And I know Ms. Greenberg said that, she said

8    something in her letter about a conspiratal matter, and there's

9    nothing like that going on.

10             I made my decision based on my discussions with the

11   debtor and that's it.

12             THE COURT:  All right.

13             MR. RASA:  And what I looked at.  So getting past

14   that, I think the touchstone is this, there's a couple of

15   arguments here that are arguments that have to be worked out.

16   The first one is the 109E issue, Your Honor.  And that's in

17   fact, that paramount.

18             If this debtor cannot be a debtor in Chapter 13, then

19   there's only two options here.  To dismiss or convert.  From

20   what I see the issue right now, and Mr. Porter can certainly

21   confirm this, the issue of what's owed is actually -- that's

22   being litigated in Superior Court at this time.

23             THE COURT:  Well, there' a judgment.

24             MR. RASA:  There's a judgment, however there's

25   credits that are due to the debtor.

Rasa/Argument                          16

1              THE COURT:  Well, there may be a lawsuit in the

2      Superior Court about credits and things on the lease.  I don't

3      know.  But I do know there's a judgment that's been appealed in

4      the State Court.

5              MR. RASA:  The foreclosure judgment you're speaking

6      about.

7              THE COURT:  The foreclosure judgment.

8              MR. RASA:  You're right, Your Honor.

9              THE COURT:  Okay.

10             MR. RASA:  You're right, Your Honor, and that's out

11     there.  But off of that has to come these credits.  And there's

12     ample evidence that he's owed something off of that judgment,

13     and that's going to drive it below -- I think the judgment

14     started out at 1,051,000, and then there's interest

15     calculations, but off of that we assert there has to come

16     credits.

17             Now can we know what the amount is today?  No I don't

18     think we can.

19             THE COURT:  Well, that's an interesting argument,

20     because the last attorney was in here two weeks ago telling me

21     about the judgment, his argument was that I should calculate

22     the post judgment rate and not the contract rate, to get it

23     under the threshold.  And you know, we debated that and I

24     pointed out that there's significant case law that would allow

25     the contract rate to be applied.

Rasa/Argument                                17

1           MR. RASA:  I agree.

2           THE COURT:  And that judgment in particular says, the

3   contract rate should be applied.  So, but I only mention that

4   because you know, now we've got a little different twist.  Now

5   there's setoffs that are potentially out there.  In any event.

6           MR. RASA:  I'm aware of the contract rate arguments,

7   and that's why I didn't raise that issue because I believe that

8   there probably are arguments that could be made that that is

9   the rate.  Even though I do believe that the rate -- I'm

10  talking off my head now, it seems to go over 16 percent.  And I

11  don't even know if that's permissible under New Jersey Law.

12  But that's neither here or not there at this point.

13          I do believe that there are setoffs that should come

14  off of that.  But I guess my point is, I don't think we can

15  determine that right now.  That's a core issue to be determined

16  by Your Honor.  But I don't know that we can -- I'm certainly

17  not in a position, maybe Mr. Rosellini two weeks ago since he's

18  been in State Court, Mr. Porter, they can determine that.

19          THE COURT:  Well, why don't you just address --

20          MR. RASA:  They have enough discovery, but I

21  certainly don't.

22          THE COURT:  Why don't you address the Lilley factors

23  and tell me why I should not find this petition to have been

24  filed in bad faith and abuse of the Bankruptcy Code, which was

25  essentially, what I found two weeks ago, when the mother filed

Rasa/Argument                                    18

1  again on the eve of foreclosure to effect the same result?

2            MR. RASA:  Your Honor, let me --

3            THE COURT:  What's different?

4            MR. RASA:  Let me see if I can keep it as simple as

5  possible.  And I explained this to the debtor last week.  I

6  explained it to anyone who would listen or read my papers,

7  very, very simple.  Any debtor going into bankruptcy has to

8  have a way out of bankruptcy.  Any attorney that files, or

9  debtor let's say, forget about the attorney, any debtor who

10 files a petition with no plan to get out of the bankruptcy case

11 is filing a bad faith petition.  If you don't have a plan, you

12 can't do it, you ought not to be filing.  Plain and simple.

13            In this case, we have a plan.  We have a plan to get

14 out.  There is a buyer.  The buyer to pay far in excess of what

15 the, whatever the claim is by the mortgagee.

16            THE COURT:  Yes, assuming it were to close.

17            MR. RASA:  He has a significant net worth.  And I

18 have it on paper.  I'll hand this up.

19            THE COURT:  Well, they can go to the sale then and

20 buy it at the sale.

21            MR. RASA:  I don't know that he actually has cash, he

22 needs to get a mortgage.  He advised me --

23            THE COURT:  That's the condition I was referring to.

24 It's a big mortgage.

25            MR. RASA:  Understood, Your Honor, understood.  But

Rasa/Argument                                              19

 1   that being said, it's not a sham transaction.  And I think that

 2   is speaking directly to Your Honor's concern, is it a bad faith

 3   filing.  No, not if you can propose a plan, confirm a plan and

 4   pay the plan off, it's not a bad faith filing.  And I went

 5   through the <u>Lilley</u> factors in my brief.

 6             THE COURT:  You did.

 7             MR. RASA:  And I can --

 8             THE COURT:  No, that's all right.  You did in your

 9   memorandum.

10             MR. RASA:  But that's the crux of it, Your Honor.

11             THE COURT:  All right.

12             MR. RASA:  That's the crux of it.

13             THE COURT:  All right.

14             MR. RASA:  There's a couple of things that I would

15   like to address that Mr. Porter raised in his argument.  The

16   automatic stay, vacating the automatic stay is kind of like

17   stopgap measure which would allow the debtor I guess to remain

18   in bankruptcy but vacate the automatic stay.  If the automatic

19   stay were vacated, I think what would happen, Your Honor, would

20   be a mess, an entire mess.  The case couldn't proceed, I don't

21   believe, because there would be no way to, for the debtor

22   ostensibly to pay off the plan.  So I don't think that would

23   work.  It would be far better I think to dismiss the case then

24   just to vacate the automatic stay.  I don't think it would

25   work, Your Honor.  I think we would be fooling ourselves.

1          THE COURT:  The only attractive element of vacating

2     the stay would stop your client from filing another petition.

3          MR. RASA:  You're right, Your Honor.

4          THE COURT:  But I don't think it's an appropriate --

5          MR. RASA:  No, I don't think that would work.  Now

6     there is something that I did pick up that Mr. Porter picked

7     up, although Mr. Porter used the wrong date.  He said there was

8     a mortgage commitment date of October 20th of 2011, that's

9     wrong.  It is actually October 20th of 2010 in the contract.

10    It's a typographical error, Your Honor. And it's something I

11    want to bring up with Mr. Santore and I haven't had the chance

12    to raise that issue.

13         The buyer indicated that within 30 days he can give a

14    mortgage commitment.  And he would be willing to get hard money

15    if he needed to.  Although I don't think so based on his net

16    worth, I don't think that would be an issue.

17         And with respect to the appraisal, I looked at the

18    appraisal.  I don't see anything on the face of the appraisal

19    that indicates that it's a sham appraisal.  It's a real

20    company, and it does actually show an appraised value.  So I

21    don't know what Mr. Porter is talking about frankly.  And I

22    understand that he's emotional about this case, I can hear it

23    in his voice.  The two times I've spoken to him or heard from

24    him on the telephone he was emotional.  And that's okay, I

25    guess he's been living with this case for a long time, it's

Rasa/Argument                                        21

1   okay to be emotional.  Zealous advocacy is sometimes a good

2   thing.

3            But I don't see anything wrong with the appraisal.

4   It looks to me to be a preliminary appraisal from a company

5   that, a guy who has an MAI certification, so I don't see

6   anything wrong with that, Your Honor.

7            And I think I addressed most of the issues that I

8   wanted to address that were raised by Mr. Porter.  As I said,

9   in summing up, Your Honor, it was a good faith filing.  He has

10  a means to propose a plan, to confirm the plan, and to pay the

11  plan off.

12           I agree that the 109 issue has to be addressed.  It

13  has to be addressed by this Court.  And it should be addressed

14  in one of two ways.  Either, Your Honor's going to have to take

15  testimony.  I think it's going to require a plenary hearing.

16  But the case shouldn't be dismissed.  The appropriate avenue to

17  go if the claim is too high is to be converted to a Chapter 11

18  case and we get it done that way.

19           And I considered that last week.  However, the

20  administrative costs, full well knowing I know that I, you

21  know I just filed a Chapter 11 plan today, the administrative

22  costs involved with it, that type of case, if it can be done as

23  a Chapter 13, it would be far preferable.  If necessary we can

24  do an 11 and let the chips fall where they may.

25           THE COURT:  All right.

1          MR. RASA:  Your Honor, I don't believe I have

2    anything further.  I think I addressed everything that I needed

3    to address.

4          With regards to the sale, let me mention one other

5    thing.  Your Honor, I put it in as a cross motion, although I

6    spoke to your courtroom deputy and I'm not sure I did it the

7    right way, on Pacer or ECF.  However, I don't know that the

8    sale motion is appropriate to be brought on a summary fashion

9    like this.  I think it needs to have notice.  You need to, if

10   anything, stir interested parties to come forward and I

11   represent the debtor and I want to see the debtor succeed, and

12   I want to see him get as much money as possible.  And if there

13   are interested parties, they have to know about it.

14          I don't know that it's so appropriate that Your Honor

15   rule on that today, but I wanted to get it in so I put

16   everything forward and if we need to hear that at a later time,

17   then so be it.

18          THE COURT:  All right.

19          MR. RASA:  Thank you, Your Honor.

20          THE COURT:  Thank you.  Ms. Greenberg, do you want to

21   be heard?

22          MS. GREENBERG: Briefly, Your Honor.  I do concur with

23   Mr. Porter.  The one thing I agree with Mr. Rasa about is that

24   we can't handle the sale motion today, and that would be wholly

25   inappropriate.  Our debtors come to us with their histories and

1  with their backgrounds, and very few have histories as this has

2  had.

3        Mr. Mondelli and his family has been through the

4  system in the State Court system and the appellate system.  And

5  once again we're here with the debtor wanting this Court to

6  really step into the shoes of what's going on in State Court

7  and with the appeals.  Or to reconsider last week's argument

8  and ruling.

9        You know, there was the credit counseling that was

10 done February 29th, we can't ignore that.  Mr. Rasa advised the

11 Court that he talked to people, he did his research, and

12 everything, however, we have nothing more than a skeletal

13 petition and we don't have a plan.  We could talk about a plan,

14 but there is no plan.  There's no plan filed. There are no real

15 schedules filed.  There's nothing for us to look at.

16       With a debtor with that history and with counsel with

17 that knowledge, they need to know that they're coming in here

18 and they're going to fight an uphill battle.  And they should

19 be prepared and should have been on the offense instead of on

20 the defense.  Maybe they weren't aware that they were going to

21 be faced with this motion.  I don't know.

22       But I think to come in here now and to say, it's not

23 bad faith, we need another -- we've heard this, we've been

24 there, we've done it.  And I don't think this case is

25 appropriately filed as a 13.  And I don't think the case should

Rasa/Argument                                             24

1   be continued.

2              THE COURT:  Okay, thank you.

3              MR. RASA:  Your Honor, if I may quickly address.

4              THE COURT:  Sure.

5              MR. RASA:  The concerns raised by the Trustee.  The

6   schedules, I actually have schedules, I haven't filed them.  I

7   do have them.  In fact they were largely prepared last week.

8   As Your Honor knows, I wrote to the Court, I had been very busy

9   and I wanted to review these, especially for that reason,

10  especially for that reason.  Because it appeared that we were

11  going to have substantial opposition.

12             But the schedules are done as is the plan, and I'm

13  ready to file them, and it will be filed.  I do apologize that

14  it's not, and the Trustee's argument is noted.

15             THE COURT:  Okay.

16             MR. PORTER:  Just briefly, Your Honor.  Mr. Rasa, if

17  he'd done his homework, would have realized that the so called

18  inequities that he's referred to were subject to Court approval

19  by Your Honor on May 16th 2007 when the transaction was

20  approved.  And then the fall of 2007 when there was an

21  application to enforce the ground lease and approve the ground

22  lease.  And then that was appealed to Judge Martini and it was

23  affirmed there in April 2008.  And then later it went to the

24  Court of Appeals.

25             So this transaction is sacrosanct, Judge.  It is a

Porter/Argument                                           25

1   bona fides transaction.  And it's far too late for anybody to

2   come forward and say, let's look back to figure out what

3   happened.  That boat sailed.

4          In terms of the shamness of this transaction, Judge,

5   if you look at page 4 of the contract, additional provisions,

6   it says, "29B: purchase of this property is subject to

7   satisfactory income based appraisal based upon the existing

8   ground lease as the market value without the ground lease most

9   likely exceeds the value of the property with the ground lease

10  limitations.  If the ground lease is terminated during pendency

11  of litigation or by court order of the Bankruptcy Court, then

12  all appraisal contingencies will be removed", Judge.

13         There's a ground lease here, Judge.  This is a sham

14  transaction because the ground lease is not going away.  It's

15  been approved.  Res judicata, collateral estoppel, prevent this

16  matter from being, this contract from being even considered,

17  Judge.  So I think it's important for Your Honor to recognize

18  that.

19         In terms of the disingenuous of this application

20  being filed, on October 26th a gentleman by the name of August

21  Santore contacted one of my client's former partners, and told

22  them that he was interested in buying the property.  But what

23  happened though, Judge, is that he goes on to say that he will

24  do anything he can, no matter what the cost, so stop VRP, my

25  clients, from getting the property at foreclosure.

Porter/Argument                          26

1          The dye was caste, Judge.  They knew about this

2     transaction.  And I think as Your Honor has correctly pointed

3     out, that there really is no prejudice. If these parties want

4     to come forward and buy the property at the Sheriff's sale,

5     they could do that.  And there would be nothing more than would

6     please my clients to move on.

7          In addition, Your Honor, even if we go forward with

8     the foreclosure sale, which I urge Your Honor to permit, is

9     that Mr. Mondelli has another ten days after that to redeem his

10    right of redemption.  So this man of supposed substantial net

11    worth can put together a deal, not just today, he's got

12    essentially 15 days to do it.  He's had since at least October,

13    we know that.

14         So Judge, I submit to you that the application is a

15    sham. It was filed in bad faith for no purpose other than to

16    stop the transaction.  And I think as Your Honor has correctly

17    pointed out, the mortgage itself sets forth 17 percent which

18    brings it up to $1,180,000 which is clearly $100,000 over the

19    threshold. If there are any setoffs due, they are to be

20    adjusted at the foreclosure sale, Judge.  That's where it

21    happens, not before Your Honor, Judge.

22         Finally, Judge, and I think this is a very important

23    point, Judge, is that you have no proof from these buyers that

24    they are going to go forward with this deal.  Zero.  You have a

25    fake contract that has typographical errors we're told now.  I

Decision                                    27

1    don't think they are.  And what we have, Judge, is people who

2    are not serious, they are only interested in delaying this to,

3    for no other purpose than for delay.  And perhaps to push my

4    clients so that they just lose interest and abandoned their

5    interests, and that's just not going to happen, Judge.  Thank

6    you for your time.

7              THE COURT:  You're welcome.  All right.

8              MR. SANTORE:  Your Honor, since I'm being somewhat

9    attacked, may I have a moment to just address the scope of the

10   contract?

11             MR. PORTER:  Judge, I would object.

12             THE COURT:  No.

13             MR. SANTORE:  Okay.

14             THE COURT:  Before the Court is a motion to dismiss

15   the debtor's Chapter 13 petition, or in the alterative for

16   relief from the automatic stay.  I'm going to spend some time

17   for the record going through the facts of the case, because I

18   think they're significant and material.  And this is just not

19   the ordinary case.

20             On February 18, 2004, that's '04, Victor Mondelli

21   filed a voluntary petition for Chapter 13 in this court.  On

22   April 27th '07 and May 2, '07, the Court entered orders

23   authorizing Mondelli, after a lot of discussion and

24   negotiations in this court, to obtain financing from Jack

25   Silverman Reality and Mortgage Co., who I'll call the creditor,

Decision                    28

1   for its commercial property, for his commercial property at

2   issue in this case, consisting of two adjacent lots, known as

3   Lot 23 and Lot 24 in Berkeley Heights.  Lot 23 is jointly owned

4   by Mr. Mondelli and his mother, Anna Mondelli.

5          On May 15th '07; May 16, '07 and June 27, '07, the

6   Court entered consent orders permitting Mr. Mondelli and his

7   mother to enter into a transaction with the creditor involving

8   a loan to Mr. Mondelli, secured by mortgages on the property

9   and a 99 year ground lease by Mr. Mondelli and his mother to

10  the creditor Berkeley, so that Berkeley could develop the

11  property.  It's alleged that almost immediately that the loan

12  proceeds were paid into the bankruptcy estate, and Mr.

13  Mondelli's creditors were paid off, Mr. Mondelli embarked on a

14  campaign to avoid the transaction and prevent the creditor from

15  redeveloping the property, including filing numerous motions

16  with this Court seeking reconsideration of the orders

17  authorizing the transaction, and enforcing the Court's own

18  orders.  And when those motions were denied, Mr. Mondelli

19  appealed the orders to the District Court.  He was denied

20  there.  And then he appealed to the Court of Appeal, Third

21  Circuit Court of Appeals, and eventually to the United States

22  Supreme Court.  All of Mr. Mondelli's appeals were

23  unsuccessful.

24         Mr. Mondelli and his mother eventually defaulted on

25  the mortgages and judgments of foreclosure in the State Court

Decision                                29

1   were entered on September 6th 2011.  Copies of those judgments

2   are provided by the creditor, attached to the moving papers.

3   Writs of attachment were issued on November 29th 2011.  And a

4   Sheriff's sale for the two lots was scheduled for February 1,

5   2012.  Mr. Mondelli adjourned the sale to February 29th 2012.

6         On February 28th 2012 Anna Mondelli, through a power

7   of attorney, executed that day as I recall to Mr. Mondelli,

8   filed a petition for Chapter 13 protection in this court. And

9   as a result, the Sheriff's sale was stayed.  Mr. Mondelli, he

10  attempted to stay the Sheriff's sale by motion first, in

11  January.  That was denied.  Then they came to this court.

12        On March 7th, after Anna Mondelli's petition was

13  filed and the stay was effected, we had a hearing in this court

14  on the creditor's motion, very similar to the motion that's

15  before me today, seeking to dismiss Anna Mondelli's petition,

16  one for lack of statutory jurisdiction because the amount of

17  the secured debt exceeded the statutory maximum under 11 USC

18  Section 109.  And also because the creditor felt the filing was

19  made in bad faith solely to delay the Sheriff's sale without

20  any realistic prospect of reorganization.

21        The Court ruled in favor of the creditor that day.

22  And entered an order on March 7, 2012 dismissing the case

23  because I felt it was a bad faith filing.  And also a question

24  -- and felt that we didn't have jurisdiction in Chapter 13

25  because the threshold had been exceeded.

Decision                                    30

1        After the stay was lifted by this Court's order

2   dismissing Anna Mondelli's bad faith bankruptcy petition on

3   March 7th, the Sheriff again rescheduled the sale for March

4   14th 2012.  Mr. Mondelli apparently waited until the morning of

5   March 14th and filed his petition for Chapter 13, which is

6   before the Court at this point.

7        Significantly, or in addition, also filed, although

8   filed on the morning of the Sheriff's sale, the certificate of

9   credit counseling attached to the petition shows that Mr.

10  Mondelli received credit counseling as far back as February

11  29th, the morning of the previously scheduled sale, and the day

12  after his mother filed her bad faith petition.  Creditor makes

13  that point to argue that Mr. Mondelli was preparing this new

14  petition as long ago as two weeks.

15       Mr. Mondelli owes at least $1,183,000 pursuant to

16  judgments of foreclosure entered by Judge Malone in the

17  Superior Court in New Jersey on September 6, 2011.  This

18  consists of a judgment in the amount of $1,051,682 plus tax

19  costs and attorney's fees.  The accrued post judgment interest

20  rate authorized by Judge Malone allows for interest calculated

21  through March 14th of $92,638.  Therefore the total debt due as

22  March 14th was at $1,183,062 which exceeds the statutory limit

23  for a secured debt of $1,081,000 in Chapter 13 cases by more

24  than 100,000.  See 11 USC Section 109.  It's no different than

25  it was a couple of weeks ago when I made the same finding that

Decision                                      31

1   it exceeded the secured party limitation.

2            The creditor also argues that Mr. Mondelli's Chapter

3   13 filing made in '04 was converted to a Chapter 7 case and

4   closed in March of 2010 after a discharge was entered.   But

5   that his case was reopened in July of 2010 because of filing of

6   appeal concerning numerous orders of the Bankruptcy Court.   And

7   they argue further that that case is still open and that this

8   case is then ineffective.

9            The debtor argues however that the previous case,

10  even though on appeal, it has been closed.   The docket would

11  seem to indicate it is closed.   In any event, the creditor

12  seeks dismissal of Mr. Mondelli's bankruptcy case as a bad

13  faith filing, made solely to delay the Sheriff's sale, is

14  without statutory jurisdiction, and should be dismissed.   They

15  ask for sanctions and penalties against Mr. Mondelli, his

16  attorney, and also his prior attorney.

17           The Chapter 13 Trustee files a letter essentially

18  arguing what she's mentioned in court.   But she writes to us

19  and says that a skeletal petition was filed on behalf of Mr.

20  Mondelli on March 14th, a mere week after the dismissal of his

21  mother's Chapter 13 filing, who's the co-owner reality.   The

22  certificate of credit counseling from Mr. Mondelli was prepared

23  on February 29th 2012, the day after the filing of Anna

24  Mondelli.

25           Chapter 13 Trustee, utilizing her experience in

Decision                                    32

1    dealing with these cases on a daily basis, says that this

2    raises, at the very least, the suspicion that Mr. Mondelli and

3    his mother orchestrated the pre-planned bankruptcy filing so as

4    to further frustrate the main creditor in a conspiratorial

5    manner.

6         She points out that the cover page of the instant

7    petition indicates the exceeded liabilities exceed the

8    statutory amount.  And she joins the secured creditor's request

9    to dismiss the case with a bar, 180 day bar against refiling by

10   Mr. Mondelli, any successors in interest, with prospective

11   relief to be applied.  And further requests counsel fees be

12   awarded in the amount of $1,000 for her time spent on the

13   review of the case and this motion, in drafting the reply, and

14   her appearance here today in court.  I kind of get the feeling,

15   I think Ms. Greenberg said when she was on her feet, enough is

16   enough.

17        Mr. Mondelli's counsel submitted a detailed

18   opposition.  I would note, or would note it's an attorney's

19   opposition, it's a statement.  There is to my knowledge, no

20   certification filed by Mr. Mondelli.

21             MR. RASA:  No, Your Honor, there was a certification.

22             THE COURT:  By Mr. Mondelli?

23             MR. RASA:  Yes, there was, Your Honor.

24             THE COURT:  Okay, I didn't see that, I read your

25   opposition.  The opposition essentially says that the filing

Decision                    33

1   was -- and for the first time at least, the debtor acknowledges

2   that the filing was precipitated by a pending foreclosure sale

3   which the debtor sought to stop.  The debtor, it's alleged, had

4   entered into a contract of sale.  The buyer is the debtor's

5   cousin.  It's argued the price is based on a recent appraisal.

6          The debtor's relationship with the creditor and the

7   prior bankruptcies should not be considered by the Court I'm

8   told.  The debtor now has a bona fides buyer and a reasonable

9   sale contract that can be proposed, confirmed and completed.

10  It's argued that the assets are minimal with the exception of

11  the real property.  And that he further points out or argues

12  that the Chapter 7 case was closed so the debtor's entitled to

13  file the case.  And argues further that sanctions are not

14  warranted as the case was filed in good faith, which they

15  repeatedly suggest.

16         They seek by way of cross motion the authority to

17  sell the property, I think it's certainly acknowledged even by

18  debtor's counsel and all that you know, we can't move a cross

19  motion on such limited notice.  But I'll accept the whole

20  contract, appraisal, cross motion information as a, two things,

21  one as a defense to the motion to dismiss.  And two as a motion

22  that the debtor through counsel is prepared to file

23  expeditiously to seek Court approval if the case isn't

24  dismissed.  So that evidence, if you will, I'll accept before

25  the Court on this motion.  It won't be discounted.

Decision                                34

1        The law as I mentioned last time on this motion, or

2   this type motion, is relatively clear.  Lack of good faith in

3   filing a petition is sufficient for dismissal for cause under

4   Chapter 13.  See In Re:  Goddard 212 BR 233, 237 (District New

5   Jersey, 1997), which cites and refers to the leading case of

6   the Third Circuit, In Re: Lilley 91 F. 3rd 491 (Third Circuit,

7   1996).

8        Moreover, a petition filed for no other purpose than

9   to delay a Sheriff's sale is a bad faith filing.  See In Re:

10  Antonelli, that's Judge Wizmer's recent case of January 30,

11  2012. It's at Westlaw 280772.

12       Factors to be considered under Lilley are the nature

13  of the debt, the timing of the petition, how the debt arose,

14  the debtor's motive in filing the petition, how the debtor's

15  actions effect creditors, the debtor's treatment of creditors

16  both before and after the petition was filed, and whether the

17  debtor has been forthcoming with the Bankruptcy Court and the

18  creditors.  See In Re: Lilley 91 F. 3rd 491 at 496.

19       Of course the creditor and Mr. Mondelli's counsel

20  take opposite views on how the factors play out under Lilley.

21  But the Court in analyzing those factors and analyzing what's

22  gone on in this case, and you can't be blind to the history of

23  Mr. Mondelli in this Court.  I shouldn't be and I can't.

24       He filed originally in 2004 in this Court, and I've

25  said this before on the record in Mr. Mondelli's cases,

1  sometimes no good deed goes unpunished.  The Chapter 13

2  Trustee, the Court and others sought to assist Mr. Mondelli.

3  The case was converted, I re-converted, tried to help him make

4  a deal.  And then nothing occurred after that except to unwind

5  the deal that he wanted to make.  Including appeal after

6  appeal, all of which were denied.  Apparently that's going on

7  in the State Court the same way.

8         If one views the _Lilley_ factors, the timing of the

9  petition is a factor with bad faith filing.  Well, it couldn't

10  be no more obvious purpose for the filing.  And it's not the

11  first time.  He did a couple of weeks ago through his mother.

12  It couldn't be more obvious.

13         The debtor's motive in filing the petition.  That's

14  to stay the sale.  Again.  How the debtor's actions affected

15  the creditors, it's delayed this creditor an extraordinary

16  amount of time.  The debtor's treatment of creditors both

17  before and after the petition was filed.  Well, this creditor

18  has been treated both and after the petition and we can talk

19  about the variety of petitions, in a way I think that's unfair

20  and in just, you know, it gives the Bankruptcy Court and the

21  Bankruptcy Code a bad name if we allow debtors to utilize it to

22  effect rights that are guaranteed by law.

23         I denied many, many, probably most motions to dismiss

24  filed right after the petitions have been filed because of bad

25  faith.  I certainly denied legends more than I've granted.

Decision                                                          36

1   Because we're here under operating under a Bankruptcy Code and

2   the fundamental principle of Bankruptcy Code is rehabilitation,

3   fresh start, and assistance to a debtor.  But when it crosses a

4   line to where the debtor is improperly utilizing the Code for

5   his own personal advantage, it's abusive of the Code.  It's

6   just unfair and it's what bad faith filings are all about.

7          I have no difficulty in all candor, finding this case

8   to be a bad faith filing.  I'm going to dismiss the case with

9   prejudice because of Mr. Mondelli's bad faith filing designed

10  simply to affect this creditor's rights in the State Court.

11         I'll address the, that's one, two, the case is also

12  dismissed with prejudice because of the creditor's own debt

13  structure.  It's just in excess of the Section 109 limitations

14  for Chapter 13.  Now counsel's correct, you could convert it to

15  an 11.  All right, this is not an 11.  I suppose I could be a

16  wiseguy and I just leave the case here, and grant the relief

17  from the stay.  Then Mr. Mondelli wouldn't be back filing a new

18  case, I wouldn't have to deal with this later.

19         But I don't think that's appropriate either.  Because

20  there's nothing left to administer of the case.  So I'm not

21  going to do that.  I'm going to dismiss with prejudice for a

22  bad faith filing and impose a 180 day bar against Mr. Mondelli

23  filing another bankruptcy petition.

24         Now let me address the contract and the appraisal,

25  which is the first time it's coming before the Court.  It's

Decision                                                    37

1   clear that the prospective buyer knew of this, at least six

2   months ago when they approached the creditors.  When do they

3   come forth?  Now, after the second Chapter 13 is filed, and

4   there's contingencies.  There's a big contingency in that

5   contract.  Assuming everything else washed out, there's a $1

6   million mortgage contingency.  That's a big contingency.

7            And as counsel points out, the appraisal is

8   conditioned upon there not being a lease, correct?  And there

9   is a lease.  So I've taken that into consideration.  And I just

10  think, if I really thought there was somebody next week or two

11  weeks from now that could take this case out and pay off the

12  creditor and save Mr. Mondelli, I'd think differently.  But I

13  just think it's another -- there is no evidence before me of

14  that.  The only evidence before me is the bad faith filing with

15  some bootstrap contract with contingencies that are going to

16  take months. And if the buyer really wants to participate, they

17  can go to the sale, or they have 10 days to help Mr. Mondelli

18  on his right of redemption.  So there's remedies stills

19  available.

20           But for those reasons, I'm going to dismiss the

21  petition with prejudice.  I'm going to impose 180 day bar.  And

22  I'm going to assess attorney's fees, I'm going to assess a

23  sanction against Mr. Mondelli, not counsel today, but Mr.

24  Mondelli $5,000 payable to the creditors.  $2500 of which would

25  be for attorney's fees for their attorney to have to come do

Decision                                        38

1   all of this, his bill is probably in excess of that.  The

2   balance basically for the interest that these folks have lost

3   for the seven or eight days.  That's $5,000.  And another

4   $1,000 which is what Ms. Greenberg's requested.

5          Again, Mr. Mondelli is to satisfy those obligations.

6   I'm not going to sanction or at this point award fees against

7   counsel today. I'm satisfied Mr. Rasa has indicated the

8   circumstances under which he was involved.  His due diligence.

9   And I'm satisfied that he shouldn't be so sanctioned.  I don't

10  know what's in front of me that I can sanction Mr. Rosellini,

11  in all due candor, despite the suspicion of creditor's counsel

12  that Mr. Rosellini is involved.  So we're not going to sanction

13  him either today.

14         That's the order of the Court.  Will you prepare an

15  order?

16         MR. PORTER:  Thank you.  Yes, Your Honor, we will.

17         THE COURT:  Make sure Mr. Rasa sees it.  Send it to

18  me, I'll sign it right away.

19         MR. PORTER:  Thank you, very much, Your Honor.

20         MR. RASA:  Your Honor, I have to ask this, would you

21  stay your order pending perhaps if he wants to appeal this?

22  I wouldn't handle an appeal, I don't generally do that type of

23  work.

24         THE COURT:  No, but I appreciate you make an

25  application for a stay pending an appeal, it's denied.

Decision                                39

1              MR. RASA:  Okay, thank you.

2              THE COURT:  Denied.  You're free to go to the

3    District Court if he's like. Thank you.

4              MR. RASA:  Understood, Your Honor.

5              MR. PORTER:   Thank you, Your Honor.

6              MR. RASA:  Thank you, Your Honor.

7              THE COURT:  Thank you everybody.

8                   *          *          *

9              **C E R T I F I C A T I O N**

10             I, **PATRICIA POOLE**, court approved transcriber,

11   certify that the foregoing is a correct transcript from the

12   official electronic sound recording of the proceedings in the

13   above-entitled matter.

14

15   _____

16   /S/ PATRICIA POOLE

17   TERRY GRIBBEN'S TRANSCRIPTION SERVICE DATE:  _____

18

19

20

21

22

23

24

25